# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1594 | **DATE** | 7/21/2003 |
| **CASE TITLE** | Alex D. Moglia vs. Quantum Industrial Partners | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Bankruptcy Court's judgment as to Counts I and III is AFFIRMED on different grounds, the bankruptcy court's judgment as to Count II is AFFIRMED, while the bankruptcy court's decision to grant Quantum's motion to dismiss Count IV is REVERSED AND REMANDED for further proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 22 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| WAP | courtroom deputy's initials | 03 JUL 22 PM 3:00 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JUL 2 1 2003

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

In re: OUTBOARD MARINE
CORPORATION et al.,

Debtors.

ALEX D. MOGLIA, not
individually, but as Chapter 7
Trustee for Outboard Marine
Corporation and its Related
Debtor Entities,

Appellant,

v.

QUANTUM INDUSTRIAL PARTNERS,
LDC,

Appellee.

Case No. 02 C 1594
Adversary No. 01 A 0471
Bankruptcy No. 00 B 37405

Hon. Harry D. Leinenweber

DOCKETED
JUL 2 2 2003

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on appeal from the United States Bankruptcy Court for the Northern District of Illinois. The Appellant, Alex D. Moglia (hereinafter, "Moglia" or the "Trustee"), appeals the bankruptcy court's decision to grant third party defendant Quantum Industrial Partners, LDC's ("Quantum") motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6)("Rule 12(b)(6)"). Jurisdiction is conferred upon the Court pursuant to 28 U.S.C. §§ 158(a) and 1334. For the reasons given below, the bankruptcy court's decision is affirmed in part



and reversed in part and remanded for further proceedings consistent with this opinion.

### I. **BACKGROUND**

Outboard Marine Corporation ("OMC") and its related debtor entities once constituted one of the world's largest designers, manufacturers, and sellers of boats, outboard marine engines, and marine parts. In January 1998, OMC and its pre-petition lenders created a loan and security agreement. OMC granted the lenders a security interest in many of OMC's assets, including accounts receivable, inventory, and general intangibles.

Two years later, OMC sold 650,000 shares of convertible preferred stock and warrants to Quantum and to Greenlakes Holding II, LLC, for $6.5 million. On May 5, 2000, and again on July 19, 2000, Quantum bought an additional 200,000 shares for a total of 400,000 at a cost of $40 million. With these purchases, Quantum allegedly became the beneficial or direct owner of nearly 100% of OMC stock.

On October 10, 2000, the lenders and OMC made the tenth amendment to their January 1998 loan and security agreement, adding an additional $45 million loan as Tranche B. Tranche A consisted of all the loans made by the lenders to date, a total of $105 million. On the same day, October 10, 2000, Quantum purchased a 100% participation interest in Tranche B. Quantum agreed to have Tranche B subordinated to Tranche A and gave all its legal rights

against OMC over to Bank of America (the "BofA"), the lead lender in OMC's credit facility.

On December 22, 2000, OMC voluntarily filed for bankruptcy under Chapter 11. BofA subsequently brought an action against OMC to collect on BofA's secured loans. In response, the Trustee filed counterclaims against BofA, among others, as well as a third party complaint against Quantum. Counts I and II of the third party complaint sought a declaratory judgment that Quantum's and the lenders' claims to OMC's estate are subordinate to OMC's right to reimbursement of its debtor in possession expenses under 11 U.S.C. §§ 506(c) and 552(b). Count III of the third party complaint sought a declaratory judgment that Quantum and the lenders were not entitled to collect interest and reasonable fees, costs, or charges under 11 U.S.C. § 506(b) because the collateral for the credit facility is allegedly less than $128 million. Count IV of the third party complaint sought the recharacterization of OMC's $45 million debt, allegedly owed to Quantum, as an equity security and not a secured debt. Quantum filed a motion to dismiss the Trustee's complaint pursuant to Rule 12(b)(6). The bankruptcy court, finding that the Trustee had not alleged that Quantum had a claim against OMC for payment of the debt, granted the motion as to Counts I, II, and III. In addition, the bankruptcy court, finding that it had no authority to recharacterize debt as equity, granted

the motion as to Count IV. The Trustee appealed the bankruptcy court's decision on all four counts to this Court.

## II. **STANDARD OF REVIEW**

The Court reviews the bankruptcy court's decision to dismiss the Trustee's third-party complaint with prejudice under the *de novo* standard of review. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000). The purpose of a motion to dismiss under Rule 12(b)(6) is to challenge the legal sufficiency of a complaint, not the merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998); *United States v. Sherwin-Williams Co.*, 165 F. Supp. 2d 797, 803 (C.D. Ill. 2001). When ruling on a motion to dismiss, the court "must accept as true all well-pleaded factual allegations in the claim, and draw all reasonable inferences in the light most favorable to the nonmoving party." *Sherwin-Williams*, 165 F. Supp. 2d at 803 (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997)). The Court may also consider "those matters of which the court may take judicial notice," *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987), specifically existing law. *Sherwin-Williams*, 165 F. Supp. 2d at 803. Dismissal is appropriate only if it appears beyond doubt that the nonmoving party can prove no set of facts that would entitle the nonmoving party to the relief requested in the complaint. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). The nonmoving party must allege all the elements for each

cause of action to withstand a motion to dismiss. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992).

## III. **DISCUSSION**

This appeal presents two discrete questions. First, the Trustee argues that Quantum does in fact have a "claim" against the debtor, OMC, despite the absence of a direct transaction between OMC and Quantum and that the bankruptcy court erred in dismissing Counts I, II, and III of the Trustee's complaint against Quantum. Second, the Trustee argues that the bankruptcy court erred in granting Quantum's motion to dismiss Count IV of the Trustee's third party complaint because the court erroneously found that it lacked the authority to recharacterize the transaction between OMC, BofA, and Quantum outside of the remedy of equitable subordination. The Court affirms the bankruptcy court's decision with respect to Counts I, II, and III and reverses with respect to Count IV.

### A. Count IV – Recharacterization

The Court first addresses the threshold issue of whether a bankruptcy court has the authority to recharacterize a debt as equity. The Trustee argues that the transaction involving BofA, Quantum, and OMC was, in reality, an equity investment in OMC by Quantum that was disguised as a participation interest in a loan. In an oral ruling, the bankruptcy court dismissed Count IV because "Quantum is not alleged to have a claim [right to payment] against the debtor, and, therefore, there is . . . no debt to

recharacterize" and "in my opinion there is no basis in bankruptcy law to recharacterize a debt as equity." (R. at 31.) The court based its ruling, in part, on the provision of the remedy of equitable subordination in the Bankruptcy Code (the "Code"), 11 U.S.C. § 510(c), a doctrine that permits a creditor's claim to be subordinated to other claims when that creditor has acted inequitably. *See, e.g., In re Lifschultz Fast Freight*, 132 F.3d 339, 344-45 (7th Cir. 1997). The court reasoned that, because a claim can be subordinated to other claims under the doctrine of equitable subordination and because equitable subordination is explicitly codified in § 510(c) while recharacterization is not explicitly codified but would produce a similar result, then the principle of *inclusio uno, exclusio alterus* suggests that Congress did not intend bankruptcy courts to have the authority to recharacterize a debt. The Court disagrees with the bankruptcy court's reasoning and holds that a bankruptcy court has the authority to recharacterize a debt as equity. The Court also holds that the Trustee need not allege that Quantum has a right to payment, or "claim," against the debtor in order to access this remedy.

While the Seventh Circuit has never ruled specifically on the propriety of recharacterizing a debt as equity in a bankruptcy proceeding, the court has acknowledged in passing a cause of action for recharacterization that is distinct from equitable

subordination. *In re Lifschultz*, 132 F.3d at 345 n. 3. In addition, a bankruptcy court for the Northern District of Illinois recognized recharacterization of debt to equity as a valid cause of action distinct from equitable subordination. *In re Kids Creek Partners, L.P.*, 212 B.R. 898, 931-32 (Bankr. N.D. Ill. 1997). After laying out the contours of a recharacterization cause of action, the bankruptcy court ultimately held that recharacterization was not appropriate in that case. *Id.* at 933.

There is a split in authority amongst the Circuits that have ruled on the question of whether recharacterization of a debt to equity is a valid cause of action under the Code. The Ninth Circuit rejected the idea of recharacterization as its own entity and held that debts can only be subordinated by invoking the equitable subordination doctrine. *In re Pacific Exp., Inc.*, 69 B.R. 112 (B.A.P. 9th Cir. 1986). The Ninth Circuit argued that because recharacterization has the same result as the successful application of equitable subordination, permitting the recharacterization of debts to equity under the court's equitable powers would result improperly in inconsistent standards under the Code for the subordination of debts. *Id.* at 115.

More recently, however, the Sixth Circuit unequivocally recognized recharacterization of debt to equity as valid and distinct from equitable subordination in *In re Autostyle Plastics, Inc.*, 269 F.3d 726 (6th Cir. 2001). In its opinion, the Sixth

Circuit stated that "[r]echaracterization is appropriate where the circumstances show that a debt transaction was 'actually [an] equity contribution [ ] *ab initio*.'" *Id.* at 747-48 (citing *In re Cold Harbor Assocs.*, 204 B.R. 904, 915 (Bankr. E.D. Va. 1997)). The *Autostyle* court noted that bankruptcy courts have claimed the authority to test the validity of debts under the general equitable powers provided in 11 U.S.C. § 105(a), "which states that bankruptcy judges have the authority to 'issue any order, process or judgment that is necessary or appropriate to carry out the provisions' of the Code." *Id.* at 748; *see also* 11 U.S.C. § 105(a).

Unlike the Ninth Circuit, the Sixth Circuit draws a clear line between recharacterization of a debt and the equitable subordination of a creditor's claim based on their differing functions and effects. *Autostyle*, 269 F.3d at 748.

> Not only do recharacterization and equitable subordination serve different *functions,* but the *extent to which a claim is subordinated* under each process may be different. These are facts that the *In re Pacific Express* court appeared not to recognize. Recharacterization cases "turn on whether a debt actually exists, not on whether the claim should be equitably subordinated." Matthew Nozemack, Note, *Making Sense Out of Bankruptcy Courts' Recharacterization of Claims: Why Not Use § 501(c) Equitable Subordination?,* 56 WASH. & LEE L. REV. 689, 716 (1999) (criticizing *Pacific Express*). In a recharacterization analysis, if the court determines that the advance of money is equity and not debt, the claim is recharacterized and the *effect* is subordination of the claim "as a proprietary interest because the corporation repays capital contributions only after satisfying all other obligations of the corporation." *Id.* at 719. In an equitable subordination analysis, the court is reviewing whether a legitimate creditor engaged

> in inequitable conduct, in which case the *remedy* is subordination of the creditor's claim "to that of another creditor *only to the extent necessary* to offset injury or damage suffered by the creditor in whose favor the equitable doctrine may be effective." In re W.T. Grant Co., 4 B.R. 53, 74 (Bankr. S.D.N.Y. 1980) (emphasis added).
>
> If a claim is recharacterized and, therefore "the advance is not a claim to begin with" and the creditor is not a legitimate one, "then equitable subordination never comes into play." In re Georgetown Bldg. Assocs., 240 B.R. 124, 137 (Bankr. D.D.C. [1999]). Indeed, "where shareholders have substituted debt for adequate risk capital, their claims are appropriately recast as equity regardless of satisfaction of the other requirements of equitable subordination." In re Hyperion Enterprises, Inc., 158 B.R. 555, 561 (D.R.I. 1993).

Id. at 748-49 (emphasis in original).

The Court agrees that the recharacterization of a debt as equity is distinct from equitable subordination despite the fact that the doctrines may have similar effects on the debt. The recharacterization of a debt as equity involves a factual determination as to whether or not the asserted debt is in fact debt or is instead an equity contribution disguised as debt. Equitable subordination, on the other hand, is an equitable remedy applied against a legitimate creditor who has acted inequitably. Given these distinctions, the Court believes that the Sixth Circuit correctly recognized recharacterization as a tool that may be used by bankruptcy courts.

The bankruptcy court raised one other objection to recharacterization, referring to the holdings in United States v. Noland, 517 U.S. 535, 537 (1996)(holding that the bankruptcy court

may not reorder "Congress's scheme of priorities" set forth in the Code), and *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 26 (2000)(holding "that in the absence of modification expressed in the Bankruptcy Code the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it."). These cases are inapposite because recharacterization does not reorder the priorities established by 11 U.S.C. § 726 nor does it reorder distributions. Recharacterization is simply a factual inquiry that determines, in the first instance, whether an asserted debt is in fact a debt or a concealed equity contribution. Therefore, the Court finds that the bankruptcy court erred when it granted Quantum's motion to dismiss Count IV on the grounds that it did not have the authority to recharacterize a debt as equity.

The Court also finds that the bankruptcy court erred when it granted Quantum's motion to dismiss Count IV on the grounds that the Trustee had failed to allege that Quantum had a claim against OMC. Even though Quantum is not asserting its own claim against OMC's bankruptcy estate, as it is barred from doing under the participation agreement Quantum signed with BofA, a recharacterization analysis is appropriate. By participating in BofA's credit facility, Quantum receives the benefit of BofA's perfected security interest and will receive funds ahead of all other non-secured lenders. The Court directs the bankruptcy court to determine whether Quantum's 100% participation in BofA's loan to

OMC was in reality a loan, "or rather a method used to funnel an equity contribution to" OMC. *Autostyle*, 269 F.3d at 749 n. 11.

To determine the character of the transaction, the Court directs the bankruptcy court to use the following standards. First, the Court adopts the Sixth Circuit's use of the eleven factors from *Roth Steel Tube Co. v. C.I.R.*, 800 F.2d 625, 630 (6th Cir. 1986), to determine if recharacterization is appropriate, *i.e.*, whether the transfer of funds was a loan or an equity contribution. *Autostyle*, 269 F.3d at 749-50. The eleven factors are:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

*Roth Steel*, 800 F.2d at 630. Second, the Court adds to the eleven *Roth Steel* factors two additional factors from *In re Hyperion Enterprises*, 158 B.R. 555 (D.R.I. 1993): (12) the ratio of shareholder loans to capital and (13) the amount or degree of shareholder control. *Id.* at 561. No one factor is to be determinative, and the more the transaction seems like an arms-

length deal, the more likely the transaction is a loan and not an equity contribution. *Autostyle*, 269 F.3d at 749.

The Court notes, as did the Sixth Circuit, that there is some disagreement about whether tax court recharacterization factors, such as those from *Roth Steel*, are suitable for use in bankruptcy cases. *Id.* at 749 n. 12. Some courts have argued that the policy considerations around recharacterization of a debt as equity in a tax case are distinct from the considerations in a bankruptcy case. *See Rego Crescent Corp. v. Tymon (In re Rego Crescent Corp.)*, 23 B.R. 958, 962 (Bankr. E.D.N.Y. 1982). No court, however, has identified what those different policy considerations are, let alone why those differences should preclude a bankruptcy court that is determining whether recharacterization is appropriate from relying on the factors that tax courts employ in conducting the same type of analysis. These factors serve their purpose; they enable the finder of fact to assess the true nature of a transaction. The Court will not jettison this effective set of factors simply because the factual inquiry occurs in a bankruptcy setting.

The instant case is perfectly suited to a recharacterization analysis. Quantum, the direct or beneficial owner of nearly 100% of OMC, allegedly purchased a 100% participation interest in the $45 million loan that BofA made to OMC on the same day that BofA made the loan to OMC. Given Quantum's clear insider status, heavy

scrutiny should be brought to bear on the transaction between Quantum and OMC. *See, e.g., Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1350 (7th Cir. 1987)(citing 2 COLLIER ON BANKRUPTCY ¶ 101.28 at 101-42.14 (15th ed., King ed., 1986)). The effect of finding that Quantum's purchase of a participation interest under these circumstances is in fact an equity contribution would be to recharacterize the two-step transaction as a single equity transaction between Quantum and OMC. The Court notes that because Quantum paid BofA the full amount of the loan under Tranche B to purchase a participation interest in Tranche B, BofA's position with respect to the loan under Tranche A would be untouched.

The bankruptcy court's decision with respect to Count IV is reversed and remanded for reconsideration using the thirteen factors detailed above.

### B. Counts I, II, and III

The Court now turns to the second issue on appeal, namely, whether the Trustee alleged that Quantum had a claim against OMC.

#### 1. Counts I and III

In Count I of the third party complaint, the Trustee sought a declaratory judgment that Quantum's and the lenders' claims to OMC's estate are subordinate to OMC's right to reimbursement of its debtor in possession expenses under 11 U.S.C. § 506(c). Section 506(c) authorizes a trustee to recover "the reasonable,

necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). In Count III, the Trustee sought a declaratory judgment that Quantum and the lenders were not entitled to collect interest and reasonable fees, costs, or charges under 11 U.S.C. § 506(b) because the collateral for the credit facility is allegedly less than $128 million. Section 506(b) permits the holder of a claim secured by property to collect interest on the claim as well as "reasonable fees, costs, or charges provided for under the agreement under which such claim arose" when the value of the property, after recovery under § 506(c), is greater than the amount of the claim. 11 U.S.C. § 506(b). The bankruptcy court found that the Trustee did not allege that Quantum has a claim in bankruptcy against OMC and, therefore, that neither § 506(b) nor § 506(c) applied to Quantum. As a result, the court dismissed Counts I and III.

On appeal, the Trustee argues that Quantum does in fact have a right to receive payment from the debtor, OMC, despite not having a direct transaction with OMC and that the Trustee is entitled to priority over Quantum under §§ 506(b) and 506(c). A claim is defined under 11 U.S.C. § 101 as a "right to payment," including disputed, undisputed, legal, equitable, secured, and unsecured rights. 11 U.S.C. § 101(5)(A). If the bankruptcy court finds that the recharacterization of Quantum's loan to an equity contribution

is appropriate, then Counts I and III of the third-party complaint should be dismissed as moot, because Quantum will be an equity security holder and will no longer have a claim, secured or otherwise. See 11 U.S.C. § 101(17).

If the bankruptcy court finds that recharacterization is inappropriate in this case, the Court affirms the bankruptcy court's judgment but reaches its conclusion through different analysis. *See, e.g., Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895 (7th Cir. 2003). The Court finds that the Trustee *did* sufficiently allege in its third party complaint that Quantum has a right to payment against OMC. The Trustee alleged that "$45 million was owed to Quantum under Tranche B." (Committee's Countercl. & Third Party Claims at 36.) Under the liberal notice pleading standards, this is sufficient to put Quantum on notice that the Trustee is alleging that Quantum has a claim against OMC. However, the Court also finds that the Counts asserted against Quantum are not causes of action for which relief can be granted, FED R. CIV. P. 12(b)(6), because the Participation Agreement between Quantum and BofA makes it clear that Quantum cannot assert any rights on its own behalf against OMC. (Participation Agreement § 5(c).) BofA, as lead lender, has the "sole right to enforce the obligations of the borrowers relating to its Loans and its Notes." Prepetition Loan Agreement § 14.1(d); see *also First Nat'l Bank of Louisville v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*,

933 F.2d 466, 467 (7th Cir. 1991)("only the lead bank has a direct contractual relationship with the borrower"). Quantum, as a result, is contractually prohibited from asserting a right to payment against OMC and may only make a claim against BofA. Therefore, the bankruptcy court's decision to grant Quantum's motion to dismiss Counts I and III is affirmed on different grounds.

### *2. Count II*

Section 552(b), the basis for Count II, dictates the effect of a security agreement between a debtor and another entity after the debtor files for bankruptcy protection. 11 U.S.C. § 552(b). The bankruptcy court correctly found that the Trustee failed to allege that Quantum entered into any security agreement directly with OMC as required under § 552(b). 11 U.S.C. § 552(b). As a result, the Court affirms the bankruptcy court's dismissal of Count II.

### CONCLUSION

For the reasons set forth above, the bankruptcy court's judgment as to Counts I and III is **AFFIRMED** on different grounds, the bankruptcy court's judgment as to Count II is **AFFIRMED**, while the bankruptcy court's decision to grant Quantum's motion to dismiss Count IV is **REVERSED AND REMANDED** for further proceedings. **IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: July 21, 2003